## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

**MAY – 4 2015**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

MOATH HAMZA AHMED AL-ALWI,
    (Internment Serial Number 028)
    United States Naval Station
    Guantánamo Bay, Cuba,

    *Petitioner/Plaintiff*

    v.

BARACK H. OBAMA,
    President of the United States
    The White House
    1600 Pennsylvania Avenue, NW
    Washington, DC 20500;

ASHTON B. CARTER,
    United States Secretary of Defense
    Department of Defense
    1000 Defense Pentagon
    Washington, DC 20301-1000;

REAR ADMIRAL KYLE J. COZAD,
    Commander, Joint Task Force-
    Guantánamo
    JTF-GTMO
    APO AE 09360; and

COLONEL DAVID HEATH,
    Commander, Joint Detention
    Operations Group, JTF-GTMO
    JTF-GTMO
    APO AE 09360,

    *Respondents/Defendants.*

Case: 1:15−cv−00681   (G Deck)
Assigned To : Jackson, Ketanji Brown
Assign. Date : 5/4/2015
Description: Habeas Corpus/2241



RECEIVED
Mail Room

APR 2 0

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

## NOTICE OF APPEARANCE AND CERTIFICATION
## OF REPRESENTATION WITHOUT COMPENSATION

Kindly enter my appearance on behalf of the petitioner in the above-captioned case, Moath Hazma Ahmed al-Alwi, who is presently imprisoned at the U.S. Naval Station at Guantánamo Bay, Cuba, where he was issued Internment Serial Number (ISN) 028. Further, I hereby certify, pursuant to Local Civil Rule 83.2(g), that I am representing this petitioner without compensation.

Dated: April 17, 2015

Respectfully submitted,

*Counsel for Petitioner:*

RAMZI KASSEM
N.Y. Bar No. 4332649
(pursuant to LCvR 83.2(g))
**Main Street Legal Services, Inc.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MOATH HAMZA AHMED AL-ALWI,
    (Internment Serial Number 028)
    United States Naval Station
    Guantánamo Bay, Cuba,

    *Petitioner/Plaintiff*

    v.

BARACK H. OBAMA,
    President of the United States
    The White House
    1600 Pennsylvania Avenue, NW
    Washington, DC 20500;

ASHTON B. CARTER,
    United States Secretary of Defense
    Department of Defense
    1000 Defense Pentagon
    Washington, DC 20301-1000;

REAR ADMIRAL KYLE J. COZAD,
    Commander, Joint Task Force-
    Guantánamo
    JTF-GTMO
    APO AE 09360; and

COLONEL DAVID HEATH,
    Commander, Joint Detention
    Operations Group, JTF-GTMO
    JTF-GTMO
    APO AE 09360,

    *Respondents/Defendants.*

**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Civil Action No. __-____



RECEIVED
Mail Room

APR 20 ___

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

## PETITION FOR WRIT OF HABEAS CORPUS
## AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. Moath al-Alwi ("Petitioner" or "Mr. al-Alwi") petitions this Court for a writ of habeas corpus under 28 U.S.C. §§ 2241 *et seq*.

2. Mr. al-Alwi, a citizen of Yemen, is currently and indefinitely in the exclusive custody and control of the United States government at the U.S. Naval Station in Guantánamo Bay, Cuba ("Guantánamo"). His continued indefinite imprisonment is unlawful pursuant to U.S. Constitution and laws, including the Authorization for Use of Military Force ("AUMF"), Pub. L. No. 107-40, 115 Stat. 224 (2001), the laws and usages of war, and customary international law.

3. On October 7, 2001, the U.S. commenced "Operation Enduring Freedom" in Afghanistan. When the combat mission began, Mr. al-Alwi was in Afghanistan but, like many, fled to Pakistan for safety. Mr. al-Alwi was captured at a time when many non-Afghans were sold into U.S. custody in exchange for a bounty. The U.S. government took custody of Mr. al-Alwi and rendered him back to Afghanistan, and from there he was rendered to Guantánamo on January 16, 2002. He was one of the first prisoners to arrive after the prison's opening on January 11, 2002.

4. Thirteen years later, the U.S. Commander-in-Chief has declared an end to the combat mission, Operation Enduring Freedom. Given this significant change in circumstance, there is no longer any lawful basis for Mr. al-Alwi's continued imprisonment at Guantánamo. Imprisoned for over 13 years without charge, Mr. al-Alwi is currently being held in violation of the U.S. Constitution and laws, including the AUMF, the laws and usages of war, and customary international law. As Mr. al-Alwi's continued imprisonment is now unlawful, this Court should grant this petition for a writ of habeas corpus forthwith.

RECEIVED
Mail Room

APR 20 2015

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

# I.
## JURISDICTION

5. Respondents are currently imprisoning Petitioner "under or by color of the authority of the United States" and "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (c)(3) (2008). Petitioner brings this action under 28 U.S.C. §§ 2241(a), (c)(1), (c)(3) and §2242. Petitioner further invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, 2202; 5 U.S.C. § 702; as well as Article II of, and the Eighth Amendment to, the U.S. Constitution. Because he seeks declaratory relief, Petitioner also relies on Federal Rule of Civil Procedure 57.

6. The U.S. Constitution and 28 U.S.C. § 2241 empower this Court to grant this writ of habeas corpus and to entertain the instant Petition under 28 U.S.C. § 2242. This Court is authorized to declare the rights and the other legal relations of the parties herein by 28 U.S.C. § 2201 and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction. Finally, this Court is authorized to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

7. The Supreme Court's rulings in *Boumediene v. Bush*, 553 U.S. 723 (2008), and *Rasul v. Bush*, 542 U.S. 466 (2004), further found this Court's jurisdiction to entertain this Petition. The Supreme Court recognized that Guantánamo petitioners "are entitled to the privilege of habeas corpus to challenge the legality of their detention" and that "questions regarding the legality of the detention are to be resolved in the first instance by the District Court." *Boumediene*, 553 U.S. at 723, 771, 773.

## II.
## PARTIES

8.   Moath al-Alwi is a citizen of Yemen and former resident of the Kingdom of Saudi Arabia who is presently imprisoned and held in Respondents' custody at the U.S. Naval Station in Guantánamo Bay, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.   The U.S. military has assigned him Internment Serial Number (ISN) 028.   Mr. al-Alwi acts on his own behalf through counsel.

9.   Respondent Barack H. Obama is President of the United States and Commander-in-Chief of U.S. armed forces.   Accordingly, President Obama is ultimately responsible for Mr. al-Alwi's continuing indefinite imprisonment.   President Obama is sued in his official capacity.

10. Respondent Ashton B. Carter is the Secretary of the U.S. Department of Defense.   He maintains custody of Mr. al-Alwi.   Accordingly, Secretary Carter is Mr. al-Alwi's ultimate custodian.   Respondent Carter is sued in his official capacity.

11. Respondent Rear Admiral Kyle J. Cozad is the Commander of JTF-GTMO, the task force operating the prison at Guantánamo.     Accordingly, Respondent Cozad has supervisory responsibility for Mr. al-Alwi and is sued in his official capacity.

12. Respondent Colonel David Heath is the Commander of the Joint Detention Operations Group and the JTF-GTMO prison camps, including the U.S. facility where Mr. al-Alwi is presently imprisoned.   Accordingly, Respondent Heath is the immediate custodian responsible for Mr. al-Alwi and is sued in his official capacity.

13. Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, the November 13, 2001 Military Order, 66 Fed. Reg. 57833, §2, and the AUMF, Respondents above are responsible for Mr. al-Alwi's imprisonment, custody, and control at Guantánamo.

4

## III.
## STATEMENT OF FACTS

14. Petitioner Moath al-Alwi, a Yemeni citizen, was born in 1979 and raised in a large family in the Kingdom of Saudi Arabia, where his family continues to reside. Between late 2000 and early 2001, Mr. al-Alwi left Saudi Arabia for Afghanistan.

15. On September 11, 2001, Mr. al-Alwi was in northern Afghanistan. After the United States launched its bombing operations on October 7, 2001, Mr. al-Alwi fled for safety to Pakistan. During this period, the U.S. government distributed flyers throughout northern Pakistan and Afghanistan offering substantial monetary awards in exchange for turning in "suspicious" people. This practice led to bounty hunters – often Pakistani government officials or local residents, tribesmen, and militia members – opportunistically capturing 689 individuals, many if not most on the basis of their Arab ethnicity. Consequently, 369 of these individuals were delivered to the United States, many for $5,000 each, with little if any vetting or process, earning the government of Pakistan millions of dollars in prize money. *See* Mona Samari, *Bounties Paid for Terror Suspects,* AMNESTY INTERNATIONAL (Jan. 16, 2007); [1] Pervez Musharraf, *In the Line of Fire: A Memoir* 239-243 (Free Press 2006).

16. Upon his arrival in Pakistan, Mr. al-Alwi was captured and ultimately delivered to U.S. custody. The United States first rendered Mr. al-Alwi to Afghanistan, then Guantánamo on January 16, 2002, where he remains today.

17. The Supreme Court has reiterated in a series of cases that indefinite imprisonment is not authorized and must end once the relevant conflict ends. The plurality in *Hamdi v. Rumsfeld* held that "we understand Congress' grant of authority for the use of 'necessary and appropriate

---

[1] Available at http://www.amnesty.org.au/hrs/comments/2167/.

force' to include the authority to detain for the duration of the relevant conflict, and our understanding is based on longstanding law-of-war principles." 542 U.S. 507, 521 (2004).

18. Following *Hamdi*, this Court has held that the sun would set on the President's authority to detain men like Mr. al-Alwi once the conflict had ended. *See, e.g., Hamdi*, 542 U.S. at 518 (concluding that AUMF detention of men captured during hostilities could last only "for the duration of the particular conflict in which they were captured"); *Al Warafi v. Obama*, 704 F. Supp. 2d 32, 38 (D.D.C. 2010) (government may lawfully detain individuals only as long as conflict continues); *Anam v. Obama*, 696 F. Supp. 2d 1 (D.D.C. 2010) (quoting *Hamdi*, 542 U.S. at 521) ("Under the AUMF, the President possesses the authority to detain for the duration of the relevant conflict...based on longstanding law-of-war principles."); *Awad v. Obama*, 646 F. Supp. 2d 20, 23 (D.D.C. 2009) (holding that President has authority to detain during relevant conflict while combat operations continue).

19. In 2005, Mr. al-Alwi challenged his imprisonment by filing a petition for writ of habeas corpus through a next friend.  Following the Supreme Court's ruling in *Boumediene* that Guantánamo prisoners are entitled to prompt habeas corpus hearings, Mr. al-Alwi's petition moved forward in this Court.

20. The district court found no evidence of Mr. al-Alwi ever using arms against the United States or its coalition partners. *See Al-Alwi v. Bush,* 593 F. Supp. 2d 24, 28 (D.D.C. 2008).  The court nonetheless found that Mr. al-Alwi had received training at a Taliban-related camp, remained with a Taliban unit after September 11, 2001, and stayed at guesthouses associated with the Taliban and, in one instance, al-Qaida. *See id* at 29.  Based on these findings, the court, quoting the legal standard defining the scope of detention authority, concluded that Mr. al-Alwi was lawfully detained because it was "more probable than not that he was 'part of or

supporting Taliban or al-Qaida forces' both prior to and after the initiation of U.S. hostilities in

October 2001." *Al-Alwi,* 593 F. Supp. 2d at 29 (quoting *Boumediene v. Bush,* 583 F. Supp. 2d

133, 135 (D.D.C. 2008)).  The court's decision was affirmed on appeal.  *Al-Alwi v. Obama,* 653

F.3d 11, 18 (D.C. Cir. 2011), *cert. denied,* 132 S. Ct. 2739 (2012).

21. Without conceding the accuracy of this Court's prior factual findings, in the instant

action, Mr. al-Alwi does not seek to re-litigate those findings.  He asserts, however, that he is

presently entitled to relief based on the new facts set forth below.

22. After 13 years of warfare, the U.S. military has ceased combat operations in Afghanistan.

This event intervenes as the latest in a series.  First, on May 2, 2011, the U.S. government

announced that its military forces had killed al-Qaida's leader, Usama bin Laden.  President

Obama spoke about the effect of bin Laden's death two years later, stating: "Today, Osama bin

Laden is dead, and so are most of his top lieutenants.  There have been no large-scale attacks on

the United States, and our homeland is more secure."  President Barack Obama, Remarks by the

President at the National Defense University (May 23, 2013).[2]

23. Further, President Obama pointed to the decimation of al-Qaida, declaring: "Today, the

core of al Qaeda in Afghanistan and Pakistan is on the path to defeat... [and] not every

collection of thugs that labels themselves al Qaeda will pose a credible threat to the United

States."  *Id.*  President Obama continued to describe the divided and disorganized command

structure of the remnants of al-Qaida in Afghanistan: "Core al Qaeda is a shell of its former

self....  Their remaining operatives spend more time thinking about their own safety than

plotting against us.  They did not direct the attacks in Benghazi or Boston.  They've not carried

out a successful attack on our homeland since 9/11."  *Id.*

---

[2] Available at https://www.whitehouse.gov/the-press-office/2013/05/23/remarks-president-national-defense-university.

24. On December 28, 2014, the NATO combat mission's flag was sheathed and President Obama declared the end of Operation Enduring Freedom. *See* The White House, Office of the Press Secretary, Statement by the President on the End of the Combat Mission in Afghanistan (Dec. 28, 2014).[3] President Obama announced: "Today's ceremony in Kabul marks a milestone for our country. For more than 13 years, ever since nearly 3,000 innocent lives were taken from us on 9/11, our nation has been at war in Afghanistan. Now, thanks to the extraordinary sacrifices of our men and women in uniform, our combat mission in Afghanistan is ending, and the longest war in American history is coming to a responsible conclusion." *Id.*

25. The same day, then-Secretary of Defense Chuck Hagel stated: "At the end of this year, as our Afghan partners assume responsibility for the security of their country, the United States officially concludes Operation Enduring Freedom. Our combat mission in Afghanistan, which began in the aftermath of the September 11, 2001 attacks, will come to an end." Press Release No. NR-631-14, U.S. Dep't of Defense, Statement by Secretary of Defense Chuck Hagel on Operation Enduring Freedom and Operation Freedom's Sentinel (Dec. 28, 2014).[4]

26. Finally, in his January 20, 2015 State of the Union address before a joint session of Congress, President Obama declared: "Tonight, for the first time since 9/11, our combat mission in Afghanistan is over." President Barack Obama, Remarks by the President in the State of the Union Address at the U.S. Capitol (Jan. 20, 2015).[5]

27. Since his State of the Union speech, President Obama and other national security officials in his administration have continued to point to the end of U.S. combat operations in Afghanistan. On January 28, 2015, for instance, President Obama once again stated: "After

---

[3] Available at https://www.whitehouse.gov/the-press-office/2014/12/28/statement-president-end-combat-mission-afghanistan.

[4] Available at http://www.defense.gov/Releases/Release.aspx?ReleaseID=17091.

[5] Available at https://www.whitehouse.gov/the-press-office/2015/01/20/remarks-president-state-union-address-january-20-2015.

more than 13 years, our combat mission in Afghanistan is over, and America's longest war has come to a responsible and honorable end." Remarks by the President at Farewell Tribute in Honor of Secretary of Defense Chuck Hagel (Jan. 28, 2015).[6]

28. From a peak of 100,000 U.S. troops, the U.S. has effected a planned drawdown of U.S. service members to end combat operations. On May 27, 2014, President Obama announced that only 9,800 U.S. service members would remain in Afghanistan past the conclusion of the combat mission in December 2014. *See* The White House, Office of the Press Secretary, Statement by the President on Afghanistan (May 27, 2014).[7] Remaining U.S. troops primarily guard the U.S. embassy, train Afghan forces, and support counter-terrorism operations. *Id.*

29. Most recently, in a joint statement with Afghanistan's President Mohammad Ashraf Ghani, President Obama hailed the end of combat operations and lauded the "successful completion of the security transition…with Afghan forces taking the lead on, and full responsibility for, security throughout Afghanistan." The White House, Office of the Press Secretary, U.S.-Afghanistan Joint Statement (Mar. 24, 2015).[8] President Obama also detailed plans to maintain those 9,800 U.S. troops through the end of 2015, and to establish a specific trajectory for the drawdown that will result in the consolidation of U.S. troop presence to the Kabul-based embassy. *Id.*

30. Thus, as the facts reflect and Respondents have acknowledged, with the cessation of combat operations in Afghanistan, the conflict out of which Mr. al-Alwi's imprisonment arose has ended.

---

[6] Available at http://www.whitehouse.gov/the-press-office/2015/01/28remarks-president-farewell-tribute-in-honor-secretary-defense-chuck-hagel.
[7] Available at https://www.whitehouse.gov/photos-and-video/video/2014/05/27/president-obama-makes-statement-afghanistan.
[8] Available at https://www.whitehouse.gov/the-press-office/2015/03/24/us-afghanistan-joint-statement.

31. Given this significant change in facts, Mr. al-Alwi's current indefinite imprisonment is unlawful.  Certainly, holding Mr. al-Alwi beyond the end of hostilities and the cessation of combat operations in Operation Enduring Freedom constitutes unlawful and indefinite imprisonment.

32. By continuing to imprison Mr. al-Alwi beyond the end of hostilities and the cessation of combat operations in Operation Enduring Freedom, Respondents also subject Mr. al-Alwi to lasting and severe psychological and physical harms that rise to the level of torture.  Cara M. Cheyette, *Punishment Before Justice: Indefinite Imprisonment in the U.S.,* PHYSICIANS FOR HUMAN RIGHTS 41 (June 2011).[9]

33. Additionally, despite not seeing his family for over 13 years, the only means of communication that Mr. al-Alwi is presently permitted with them is via a monitored, time delayed video-teleconference call every 10 to 12 weeks.  Thus, Mr. al-Alwi's continued indefinite imprisonment beyond the end of hostilities and the conclusion of combat operations in Afghanistan deprives him of his liberty to maintain family relations.

34. In sum, every minute that Mr. al-Alwi continues to be indefinitely imprisoned is unlawful, constitutes torture, and severely disrupts Mr. al-Alwi's physical and psychological health and well-being.

## IV.
## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### (THE AUTHORIZATION FOR USE OF MILITARY FORCE)

35. Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

---

[9] Available at http://physiciansforhumanrights.org/library/reports/indefinte-imprisonment-june2011.html.

36. The AUMF, enacted in September 2001, provided legal justification for the war in Afghanistan, which began on October 7, 2001 with active U.S. combat operations under the banner of Operation Enduring Freedom. Then-President Bush explained that this military operation in Afghanistan was for the purpose of destroying al-Qaida, which was being hosted by the Taliban government of Afghanistan. He stated:

> On my orders, the United States military has begun strikes against Al Qaeda terrorist training camps and military installations of the Taliban regime in Afghanistan.

> These carefully targeted actions are designed to disrupt the use of Afghanistan as a terrorist base of operations and to attack the military capability of the Taliban regime.[10]

37. The government lacks authority to imprison individuals pursuant to the AUMF beyond "the duration of the particular conflict in which they were captured." *Hamdi*, 542 U.S. at 518. Mr. al-Alwi was apprehended close to the beginning of that conflict. With the President's announcement that combat operations are over, the conflict has now ended and with it the government's authority to imprison Mr. al-Alwi under the AUMF. *See* The White House, Office of the Press Secretary, Statement by the President on the End of the Combat Mission in Afghanistan (Dec. 28, 2014).[11] Thus, there is no legal basis for Mr. al-Alwi's continued imprisonment and Mr. al-Alwi is entitled to habeas, declaratory, and injunctive relief, along with any other relief this Court deems appropriate.

## SECOND CLAIM FOR RELIEF

### (CUSTOMARY INTERNATIONAL LAW & CONVENTION AGAINST TORTURE)

38. Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

---

[10] *Text: Bush Announces Strike Against Taliban*, WASHINGTON POST, Oct. 7, 2001,
http://www.washingtonpost.com/wp-srv/nation/specials/attacked/transcripts/bushaddress_100801.htm.
[11] Available at https://www.whitehouse.gov/the-press-office/2014/12/28/statement-president-end-combat-mission-afghanistan.

39. The government identified Article 75 of Additional Protocol I to the Geneva Conventions as a "provision of the treaty that is consistent with our current policies and practice and is one that the United States has historically supported." The White House, Office of Press Secretary, Fact Sheet: New Actions on Guantánamo and Detainee Policy (Mar. 7, 2011).[12]

40. As such, the government declared it would "choose out of a sense of legal obligation to treat the principles set forth in Article 75 as applicable to any individual it detains in an international armed conflict." *Id.*

41. Article 75(3) of Additional Protocol I pertains to "[a]ny person arrested, detained or interned for actions related to the armed conflict." Protocol Additional to the Geneva Conventions of 12 August 1949, and Relating to the Protection of Victims of International Armed Conflicts (Protocol I), art. 75(3), June 8, 1977, 1125 U.N.T.S. 3.[13] The Article provides that "[e]xcept in cases of arrest or detention for penal offences, such persons shall be released with the minimum delay possible and in any event as soon as the circumstances justifying the arrest, detention or internment have ceased to exist." *Id.*

42. The government considers Additional Protocol I to be customary international law, and as such, all people deprived of liberty must be released at the end of an armed conflict.

43. Further, on November 12, 2014, the government informed the United Nations Committee Against Torture that the U.S. interpretation of the Convention Against Torture, and other Cruel, Inhuman or Degrading Treatment or Punishment, which the United States has signed and

---

[12] Available at https://www.whitehouse.gov/the-press-office/2011/03/07/fact-sheet-new-actions-guant-namo-and-detainee-policy.
[13] Available at https://www.icrc.org/ihl/INTRO/470.

ratified, explicitly applies to Guantánamo. *See* Charlie Savage, *U.S. Tells U.N. Panel of Steps to Revise Interrogation Policy,* N.Y. TIMES, Nov. 12, 2014, at A17.[14]

44. This Convention clearly obligates the United States to refrain from intentionally inflicting severe pain or suffering, whether physical or mental, and to afford any individual subjected to torture the right to promptly and impartially have his case examined by competent authorities— in this case, the U.S. federal court. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, arts. 1, 13, Dec. 10, 1984, 8 CFR §1208.17, 1465 U.N.T.S. 85.

45. Because combat operations have ended and Mr. al-Alwi remains imprisoned in the exclusive custody and control of the U.S. government without charge, his imprisonment is now unlawful and indefinite.

46. Further, by continuing to imprison Mr. al-Alwi indefinitely, Respondents are subjecting him to cruel, inhumane, and degrading treatment that rises to the level of torture in violation of customary international humanitarian and human rights law.

47. Accordingly, Mr. al-Alwi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## V.
## PRAYER FOR RELIEF

48. Since Respondent Obama has declared that combat operations in Afghanistan are now over, Mr. al-Alwi is entitled to immediate release. There is no legal justification under the law of armed conflict, the U.S. Constitution, or any other source of domestic or international law that would permit his continued imprisonment after the end of hostilities and the cessation of combat in Afghanistan.

---

[14] Available at http://www.nytimes.com/2014/11/13/us/us-vows-to-stop-using-torture-against-terrorism-suspects.html.

13

49. As a consequence, this Court should order Mr. al-Alwi released immediately.

**WHEREFORE**, Petitioner Moath al-Alwi prays for relief as follows:

1. That the Court issue a writ of habeas corpus to Respondents requiring them to justify Mr. al-Alwi's continued imprisonment;

2. That, upon a finding that Mr. al-Alwi's imprisonment cannot be justified, the Court order the government to release Mr. al-Alwi and to immediately take steps to transfer him to the Republic of Yemen, the Kingdom of Saudi Arabia, or a suitable third country;

3. That the Court order that Mr. al-Alwi cannot be rendered to a country, even if his own, where there is a foreseeable and imminent risk that he will be subject to torture; and

4. The the Court grant such other relief as it may deem appropriate in order to protect Mr. al-Alwi's rights under common law, the U.S. Constitution, federal statutes, and international law.

Dated: April 17, 2015

Respectfully submitted,

Ramzi Kassem
Nermeen Arastu
*Supervising Attorneys*
Andrew Adams
Syeda Tasnim
Allegra Vecchio
*Law Student Interns*
**MAIN STREET LEGAL SERVICES, INC.**
City University of New York School of Law
2 Court Square
Long Island City, NY 11101
(t) 718-340-4558
(f) 718-340-4478
(e) ramzi.kassem@law.cuny.edu

*Counsel for Petitioner*

14

## **VERIFICATION**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17 day of April, 2015.

RAMZI KASSEM