# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MOATH HAMZA AHMED AL-ALWI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-0681 (RJL) |
| | ) | |
| DONALD J .TRUMP,[1] *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**FILED**

**FEB 2 2 2017**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
February 21, 2017 [Dkts. ## 1, 15]

Petitioner Moath Hamza Ahmed Al-Alwi ("Al-Alwi" or "petitioner") challenges his continued detention at the United States Naval Station at Guantánamo Bay, Cuba, where he has been held since January 2002. Although this Court, *Al-Alwi v. Bush*, 593 F. Supp. 2d 24, 28 (D.D.C. 2008), and our Court of Appeals, *Al-Alwi v. Obama*, 653 F.3d 11, 17 (D.C. Cir. 2011), previously determined that Al-Alwi could lawfully be detained as an enemy combatant under the Authorization for the Use of Military Force ("AUMF"), Pub. L. No. 107-40 § 2(a), 115 Stat. 224 (2002), Al-Alwi now argues that the relevant conflict in Afghanistan that justified his detention has now ended, thereby extinguishing the United States' authority to detain him any longer.

Currently before the Court is Al-Alwi's Petition for Writ of Habeas Corpus [Dkt. # 1] and respondents' Response to Petition for Writ of Habeas Corpus and Motion

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), if a public officer named as a party to an action in his official capacity ceases to hold office, the court will automatically substitute that officer's successor. Accordingly, the Court substitutes President Donald J. Trump for former President Barack H. Obama.

to Dismiss or for Judgment [Dkt. # 15].   Upon consideration of the pleadings, the law, and the record, and for the reasons stated below, I find that Al-Alwi's detention remains lawful, DENY his petition for writ of habeas corpus, and GRANT respondents' Motion to Dismiss.

## BACKGROUND

Moath Hamza Ahmed Al-Alwi is a Yemeni citizen who was captured in Pakistan in late 2001 and ultimately delivered to United States custody.   He has been detained at Guantánamo Bay since January 2002.   Pet. for Writ of Habeas Corpus, ¶¶ 14-16 [Dkt. # 1]; Government's Resp. to Pet. at 4 [Dkt. # 15].   In 2005, Al-Alwi filed a petition for writ of habeas corpus, challenging the legality of his detention.   Pet. for Writ of Habeas Corpus, *Al-Alwi v. Bush*, No. 05-cv-2223 [Dkt. # 1].   After the Supreme Court held in *Boumediene v. Bush*, 553 U.S. 723, 732 (2008), that Guantánamo detainees are entitled to challenge the legality of their detention through habeas corpus, I held an evidentiary hearing to assess his habeas claim.   In December 2008, I denied his petition, finding that the government had established by a preponderance of the evidence that (1) he stayed at guesthouses in Afghanistan and Pakistan that were associated with the Taliban (and, in at least one instance, al Qaeda); (2) he voluntarily surrendered his passport at a guesthouse closely associated with al Qaeda; (3) he received military training at a Taliban-related camp and travelled to two separate fronts to support Taliban fighting forces; and (4) he remained with his Taliban unit after September 11, 2001 and several United States bombing runs in Afghanistan. *Al-Alwi v. Bush*, 593 F. Supp. 2d 24, 28 (D.D.C. 2008). Based on those findings, I determined that it was "more probable than

not that he was 'part of or supporting Taliban or al Qaeda forces' both prior to and after the initiation of U.S. hostilities" and thus could be lawfully detained under the AUMF. *Id.* at 29. In 2011, our Circuit Court held that Al-Alwi was "part of" al Qaeda or Taliban forces and affirmed his detention. *Al-Alwi v. Obama*, 653 F.3d 11, 17 (D.C. Cir. 2011).

Al-Alwi filed his second and current petition for a writ of habeas corpus in May 2015. Pet. for Writ of Habeas Corpus, [Dkt. #1]. In his petition, Al-Alwi does not challenge the Court's prior determination that he is an enemy combatant. *Id.* ¶ 21. Instead, he alleges that the relevant conflict in Afghanistan that originally justified his detention has concluded and his detention is no longer authorized by the AUMF (and violates the Geneva Convention and the Convention Against Torture). *Id.* ¶¶ 35–47. In the alternative, Al-Alwi argues that his detention has gone on for so long that it can no longer be reconciled with traditional law of war principles, and he must therefore be released whether or not the conflict is still ongoing. Pet'r's Opp'n to Resp'ts' Mot. to Dismiss at 28 [Dkt. # 16]. For the following reasons, I disagree as to both positions.

## STANDARD OF REVIEW

The government bears the burden of proving by a preponderance of the evidence that Al-Alwi is lawfully detained. If the government fails to meet that burden, the Court must grant the petition and order Al-Alwi's release. This is the standard that governed the Court's review of Al-Alwi's original habeas petition. *See* Case Management Order, *Al-Alwi v. Bush*, 05-cv-2223, at 3 (Oct. 31, 2008) [Dkt. # 76] ("The government must establish, by a preponderance of the evidence, the lawfulness of the petitioner's detention. The government bears the ultimate burden of persuasion."). Our Circuit has

repeatedly affirmed that a preponderance standard is constitutionally appropriate when reviewing Guantánamo detainee habeas petitions. *See Al Odah v. United States*, 611 F.3d 8, 13 (D.C. Cir. 2010) ("It is now well-settled law that a preponderance of the evidence standard is constitutional in considering a habeas petition from an individual detained pursuant to authority granted by the AUMF."); *Awad v. Obama*, 608 F.3d 1, 10 (D.C. Cir. 2010) ("[A] preponderance of the evidence standard is constitutional in evaluating a habeas petition from a detainee held at Guantánamo Bay, Cuba.").

## ANALYSIS

Shortly after the September 11, 2001 terrorist attacks, Congress passed the Authorization of the Use of Military Force ("AUMF"), which states

> [T]hat the President is authorized to use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons.

Pub. L. 107-40, § 2(a), 115 Stat. 224 (Sept. 18, 2001). The AUMF gives the President authority to detain enemy combatants—i.e., individuals who were "part of" or provided support to al Qaeda and Taliban forces in Afghanistan. *Al-Bihani v. Obama*, 590 F.3d 866, 872 (D.C. Cir. 2010) ("[An individual] is lawfully detained [under the AUMF if he] is . . . 'an individual who was part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners . . . .'"). This Court has already determined that Al-Alwi is an enemy combatant who can be lawfully detained under the AUMF. *Al-Alwi v. Bush*, 593 F. Supp. 2d 24, 29

(D.D.C. 2008), *aff'd*, *Al-Alwi v. Obama*, 653 F.3d 11 (D.C. Cir. 2011). As a result, the issue presented by this petition is not whether the government had the initial authority to detain him, but whether that authority has lapsed in the fifteen years since.

In 2004, a plurality of the Supreme Court observed in *Hamdi v. Rumsfeld* that it was a "clearly established principle of the law of war that detention may last no longer than active hostilities." 542 U.S. 507, 520–21 (2004) (plurality opinion) (citing Geneva Convention (III) Relative to the Treatment of Prisoners art. 118, Aug. 12, 1949, [1955] 6 U.S.T. 3316, 3406, T.I.A.S. No. 3364). Informed by the principles of the law of war, the Court held that the AUMF's grant of authority to use "necessary and appropriate force" included within it the "authority to detain [combatants] for the duration of the relevant conflict." *Id.* at 521. In the National Defense Authorization Act of 2012 ("NDAA"), Congress explicitly clarified that the AUMF gives the President authority to detain combatants "under the law of war without trial until the end of hostilities . . . ." NDAA, Pub. L. No. 112–81, §§ 1021(c), (b)(2), 125 Stat. 1298, 1562 (2012). *See also Aamer v. Obama*, 742 F.3d 1023, 1041 (D.C. Cir. 2014) ("[U]nder the [AUMF] . . . individuals may be detained at Guantánamo so long as they are determined to have been part of al Qaeda, the Taliban, or associated forces, and so long as hostilities are ongoing." (citation omitted)). Thus, the Court must determine whether "active hostilities" have ceased, such that Al-Alwi's detention is no longer permitted.

Al-Alwi argues that the Court must undertake its own wide-ranging evidentiary review of the facts on the ground in Afghanistan and determine for itself whether and

when active hostilities ended.   Pet'r's Opp'n to Resp'ts' Mot. to Dismiss at 12–15

[Dkt. # 16]. But controlling authority in this Circuit requires a much more circumscribed

inquiry than that.   In *Al-Bihani v. Obama*, our Circuit Court rejected a Guantánamo

detainee's argument that the United States' war against the Taliban had ended and that he

must therefore be released. · 590 F.3d 866, 874 (D.C. Cir. 2010).   The Court noted that

release was required upon the cessation of active hostilities, but held that the

"determination of when hostilities have ceased is a political decision, and we defer to the

Executive's opinion on the matter, at least in the absence of an authoritative

congressional declaration purporting to terminate the war." *Id.* at 874.

   *Al-Bihani* was rooted in a long line of Supreme Court authority recognizing that

the courts lack the institutional ability to decide when active hostilities conclude and

should afford the political branches substantial deference in the national security arena.

*See, e.g.*, *Ludecke v. Watkins*, 335 U.S. 160, 170 (1948) (holding that determining when

active hostilities conclude is a "matter[] of political judgment for which judges have

neither technical competence nor official responsibility."); *Commercial Trust Co. of N.J.*

*v. Miller*, 262 U.S. 51, 57 (1923) ("A court cannot estimate the effects of a great war and

pronounce their termination at a particular moment of time.")   As such, this Court must

therefore ascertain whether Congress and the President have determined that active

hostilities in Afghanistan have ceased.[2]

---

[2] Al-Alwi argues that looking to the political branches gives them "the power to switch the Constitution
on or off at will" and ignores the Court's appropriate role in habeas review.   Pet'r's Opp'n to Mot. to
Dismiss [Dkt. # 16] at 14 (quoting *Boumediene v. Bush*, 533 U.S. 723, 765 (2008)).   I disagree.   It is
conceivable that a situation could arise where the political branches represent to a court that hostilities
remain ongoing, without any factual support for their representation, or where the evidence affirmatively

Unfortunately for the petitioner, the record establishes clearly that both Congress and the President agree that the military is engaged in active hostilities in Afghanistan against al Qaeda, the Taliban, and their associated forces. With respect to the executive branch, the record establishes that the President and his national security officials believe and have clearly stated that active hostilities remain ongoing in Afghanistan. An exhaustive review of those statements is not necessary here, but a few representative examples are illustrative. For example, the White House has repeatedly informed Congress about the military's involvement in active hostilities in Afghanistan. In December 2016, President Obama sent a supplemental War Powers letter to Congress to inform them about the status of U.S. armed forces around the world. In the letter, the President stated that U.S. forces remain in Afghanistan to, among other things, "conduct[] and support[] counterterrorism operations against the remnants of core al-Qa'ida and against ISIL, and tak[e] appropriate measures against those who directly threaten U.S. and coalition forces." Letter from the President—Supplemental 6-Month War Powers Resolution (Dec. 5, 2016), at 3 [Dkt. # 30-1]. The letter also included the President's explicit statement that "the United States remains in an armed conflict, including against

---

suggests that hostilities are over. In that case, a court would be forced to wrestle with whether and how to scrutinize the political branches' determination. However, the Supreme Court has warned that whether a court has the authority to determine that "a war though merely formally kept alive ha[s] in fact ended, is a question too fraught with gravity even to be adequately formulated when not compelled." *Ludecke v. Watkins*, 335 U.S. 160, 169 (1948). Fortunately, the question is not compelled here. In addition to showing that the political branches are in agreement about the presence of ongoing hostilities, the government has provided overwhelming evidence that active hostilities *are in fact ongoing*, with thousands of U.S. service members engaged in a combination of support and active counterterrorism operations against the Taliban, al Qaeda, and associated forces. *See, e.g.*, Decl. of Rear Admiral Andrew Lewis (redacted, unclassified version) [Dkt. # 21-1] (describing ongoing conflict with Taliban and al Qaeda fighters); United States Air Force Central Command Combined Air and Space Operations Center, Combined Forces Air Component Commander 2011-2016 Airpower Statistics [Dkt. # 30-5] (listing number of air sorties and weapons releases in Afghanistan from 2011 to 2016).

the Taliban, and active hostilities remain ongoing." *Id.* President Obama also made clear in his statements to the public that active hostilities remain ongoing in Afghanistan. For example, the President issued a statement in July 2016 stating that approximately 8,400 troops would remain in Afghanistan through 2017, and that U.S. forces would "remain focused on supporting Afghan forces and going after terrorists." Statement by the President on Afghanistan (July 6, 2016), at 5 [Dkt. # 26-2].

In his petition, Al-Alwi points to several statements by President Obama in late 2014 and early 2015 indicating that the "combat mission" in Afghanistan was over to support his argument that active hostilities have ceased. *See, e.g.*, President Barack Obama, Statement by the President on the End of the Combat Mission in Afghanistan (Dec. 28, 2014) ("[O]ur combat mission in Afghanistan is ending, and the longest war in American history is coming to a responsible conclusion."); President Barack Obama, Remarks by the President in the State of the Union Address at the U.S. Capitol (Jan. 20, 2015) ("[O]ur combat mission in Afghanistan is over."); Remarks by the President at Farewell Tribute in Honor of Secretary of Defense Chuck Hagel (Jan. 28, 2015) ("[O]ur combat mission in Afghanistan is over, and America's longest war has come to a responsible and honorable end.").

However, when viewed in their proper context, these statements cannot reasonably be construed as a presidential declaration that active hostilities have ended in Afghanistan. Instead, President Obama's statements reflect a transition from Operation Enduring Freedom, which was the military's active combat mission, to Operation Freedom's Sentinel, a support and counterterrorism operation that nonetheless entails

active hostilities in Afghanistan.  Redacted, Unclassified Decl. of Rear Admiral Sinclair M. Lewis, ¶¶ 6, 17 [Dkt. #15-2 at 98].  Although the President announced a change in the military's focus going forward, he made clear that the United States would continue to engage in active counterterrorism operations in Afghanistan.  In fact, in the December 28, 2014 remarks referred to in Al-Alwi's petition, President Obama explicitly clarified that the United States would maintain a military presence in Afghanistan to "train, advise, and assist Afghan forces and *to conduct counterterrorism operations against the remnants of al Qaeda*."  President Barack Obama, Statement by the President on the End of the Combat Mission in Afghanistan (Dec. 28, 2014) (emphasis added).  As such, his comments cannot be construed as a definitive declaration that active hostilities have concluded, particularly when juxtaposed with the other numerous statements from the executive branch expressly stating that active hostilities persist in Afghanistan.

With respect to the legislative branch, Congress passed the AUMF in 2001, which gave the President the authority to use "necessary and appropriate force" in Afghanistan, which remains in effect today.  Pub. L. No. 107-40, § 2(a), 115 Stat. 224 (Sept. 18, 2001).  Furthermore, as discussed earlier, Congress passed the NDAA in 2012, which affirmed the President's authority "to use all necessary and appropriate force pursuant to the [AUMF]."  NDAA, Pub. L. No 112–81, §§ 1021(a) and (b)(2), 125 Stat. 1298, 1562.  Both indicate that Congress believes that active hostilities are ongoing and has certainly

not passed an "authoritative congressional declaration purporting to terminate the war." *Al-Bihani*, 590 F.3d at 874. As a result, his detention under the AUMF remains lawful.[3]

Finally, Al-Alwi argues in the alternative that his fifteen-year detention has gone on for so long that it cannot be reconciled with longstanding principles of war and cannot be justified under the AUMF. Pet'r's Opp'n to Resp'ts' Mot. to Dismiss at 28 [Dkt. # 16]. To support his argument, Al-Alwi points to the following language in the Supreme Court's plurality opinion in *Hamdi*:

> [W]e agree that indefinite detention for the purpose of interrogation is not authorized. Further, we understand Congress' grant of authority for the use of "necessary and appropriate force" to include the authority to detain for the duration of the relevant conflict, and our understanding is based on longstanding law-of-war principles. If the practical circumstances of a given conflict are entirely unlike those of the conflicts that informed the development of the law of war, that understanding may unravel. But that is not the situation we face as of this date. Active combat operations against Taliban fighters apparently are ongoing in Afghanistan.

---

[3] Al-Alwi also argues that his continued detention is prohibited by the Convention Against Torture and Additional Protocol I of the Geneva Conventions. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, arts. 1, 13, Dec. 10, 1984, 1465 U.N.T.S. 85; Protocol Additional to the Geneva Conventions of 12 August 1949, and Relating to the Protection of Victims of International Armed Conflicts (Protocol I), art. 75(3), June 8, 1977, 1125 U.N.T.S. 3. Specifically, he argues that the conflict in Afghanistan has ended, requiring his release under the Geneva Convention, and asserts that his continued and indefinite detention has gone on for so long that it constitutes torture, violating the Convention Against Torture. Pet. for Writ of Habeas Corpus, ¶¶ 35–47 [Dkt. # 1]; Pet'r's Opp'n to Resp'ts' Mot. to Dismiss at 28–32 [Dkt. # 16]. As an initial matter, these arguments seem exceedingly likely to fail on the merits—active hostilities remain ongoing in Afghanistan, and the mere length of his detention cannot be characterized as torture. More importantly, Al-Alwi has no judicially enforceable rights under the Geneva Conventions or the Convention Against Torture, whether he invokes them directly or indirectly, and his claims under them must therefore be rejected. Military Commissions Act of 2006, Pub. L. No 109-366, 120 Stat. 2600, 2631 (codified in note following 28 U.S.C. § 2241) ("No person may invoke the Geneva Conventions or any protocols thereto in any habeas corpus . . . proceeding to which the United States, or a current or former officer . . . of the United States is a party as source of rights . . . ."); *Al Warafi v. Obama*, 716 F.3d 627, 629 (D.C. Cir. 2013) ("[A] detainee may not invoke the Geneva Conventions in a habeas proceeding."). *See also Omar v. McHugh*, 646 F.3d 13, 17 (D.C. Cir. 2011) (holding that the Convention Against Torture is not self-executing and does not create judicially enforceable rights).

*Hamdi v. Rumsfeld*, 542 U.S. 507, 521 (2004) (plurality opinion).  Al-Alwi argues that the "scenario Justice O'Connor describes has come to pass" and that the unusual nature and length of the conflict in Afghanistan have caused conventional understandings of the law of war to unravel completely.  Pet'r's Opp'n to Resp'ts' Mot. to Dismiss at 28 [Dkt. # 16].  Therefore, the Court should order his release whether or not the conflict in Afghanistan continues.  I disagree.

Simply put, this case does not present a situation in which petitioner's detention would be inconsistent with the "clearly established principle of the law of war that detention may last no longer than active hostilities" or the rationale underlying that principle.  *Hamdi*, 542 U.S. at 520–21.  After all, 8,400 United States service members are currently stationed in Afghanistan and engage in the use of force, against al Qaeda, Taliban, and associated forces, consistent with the laws of war and in a context similar to that presented to the Supreme Court in *Hamdi*.  To say the least, the duration of a conflict does not somehow excuse it from longstanding law of war principles.

## CONCLUSION

Thus, for all the foregoing reasons, the Court DENIES petitioner's Petition for Writ of Habeas Corpus [Dkt. # 1] and GRANTS respondents' Response to Petition for Writ of Habeas Corpus and Motion to Dismiss or for Judgment [Dkt. # 15].  An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

11